

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

HDM:EMR/MED
F. #2019R00484

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 16, 2021

<u>By ECF and Email</u>

Honorable William F. Kuntz
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Ramon Romero
     <u>Criminal Docket No. 20-380 (RLM) (WFK)</u>

Dear Judge Kuntz:

  The government respectfully submits this letter in support of its forthcoming motion for a permanent order of detention for defendant Ramon Romero, charged in the above-referenced case. The defendant, a citizen of the Dominican Republic, was recently arrested in the United States on unrelated migrant smuggling offenses and consented to his removal to the Eastern District of New York from the Southern District of Florida in custody. For the reasons set forth below, the Court should enter a permanent order of detention for the defendant, as no combination of conditions can secure his appearance at trial and the safety of the community.

I. <u>Factual Background</u>

  A. <u>The Defendant's Criminal Conduct</u>

  Between at least January 2016 and October 2020, Ramon Romero was a high-ranking leader of a multinational drug trafficking organization ("DTO") with distributors in the New York-metropolitan area and the Dominican Republic. Specifically, the defendant oversaw the DTO's United States-based operations and was responsible for obtaining narcotics to import into the United States. During that time and at the defendant's direction, the DTO imported multi-kilogram quantities of cocaine into the United States through a variety of means, including by sending drug couriers on flights to the United States, concealing narcotics in mail and tractor trucks that enter the United States from Mexico, and concealing narcotics in produce shipments that are imported into the United States.

  Between January 2016 and February 2017, the DTO sent a series of drug couriers on flights to New York from the Dominican Republic. When the couriers landed in JFK airport in Queens, New York, they were escorted through Customs and baggage claim by a corrupt CBP

officer who was part of the conspiracy. After they went through Customs, the couriers were met by a driver who took them to a safe house where they waited to be paid.

Five couriers connected to the DTO, the corrupt CBP officer and the driver were arrested at JFK airport between January 2016 and February 2017. In total, law enforcement agents seized more than 50 kilograms of cocaine and $3,622 from the couriers at the time of their arrests.

In addition, in approximately May 2018, the DTO sent a shipment of approximately 250 kilograms of cocaine concealed in boxes of produce imports from the Dominican Republic to the Red Hook Port in Red Hook, Brooklyn, New York. CBP officers at the port identified and seized the cocaine.

In approximately July 2019, the DTO sent a shipment of approximately 66 kilograms cocaine concealed in boxes of produce imports from the Dominican Republic to a warehouse in Philadelphia, Pennsylvania. CBP officers identified and seized the cocaine.

Between the airport seizures, the Red Hook Port seizure and the Philadelphia seizure, since 2016 law enforcement agents have seized more than 350 kilograms of cocaine belonging to the DTO.

Multiple cooperating witnesses have informed the government of the defendant's membership and position within the DTO. Through his role, the defendant recruited, directed and paid individuals to carry out the narcotics importation schemes described herein. Additionally, Romero recruited two government servants—a CBP officer and an NYPD police officer—who unlawfully used their positions to effectuate the DTO's goals. For example, the CBP officer helped DTO drug couriers pass through JFK airport undetected, and the NYPD police officer misused his position to run record checks for a DTO member on government databases and likely passed along information on rival drug trafficking organizations. Further, recorded and electronic communications between Romero and members of the DTO all reflect that the defendant was a high-ranking DTO leader and that operations were carried out at his behest.

### B. The Indictment and Arrest

In connection with his crimes, on November 5, 2020, a grand jury sitting in the Eastern District of New York returned an indictment charging Romero with (i) one count of conspiracy to import five kilograms or more of a substance containing cocaine, in violation of Title 21, United States Code, Sections 952 and 963, and (ii) one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of a substance cocaine, in violation of Title 21, United States Code, Sections 841 and 846.

On November 5, 2020, U.S. Magistrate Judge Steven M. Gold issued a warrant for the defendant's arrest. On September 8, 2021, the defendant was arrested on unrelated migrant smuggling charges by the U.S. Coast Guard on a boat bound to the United States from the Bahamas. The defendant made an initial appearance on his removal to the Eastern District of

New York for the above-referenced case in the Southern District of Florida on September 15, 2021. The court entered a temporary order of detention for his extradition to the Eastern District of New York in custody. See United States v. Ramon Romero, 9:21-MJ-08350 (WM), Dkt. No. 3. The government expects that the defendant will be transported to the Eastern District of New York and arraigned on the indictment in the coming weeks.

II.     Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3142 et seq., in cases where a defendant is charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," a court must presume, "subject to rebuttal by the person," that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community," if the court finds probable cause to believe that the person committed such offense. 18 U.S.C. § 3142(e)(3)(A). Regardless of whether the presumption applies, such probable cause may be established by an indictment, such that there is no need for an independent judicial probable cause determination. See United States v. Contreras, 776 F.2d 51, 54–55 (2d Cir. 1985).

If a presumption of detention is applicable, the defendant bears the burden of rebutting that presumption by coming forward with evidence "that he does not pose a danger to the community or risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (citation omitted). In any event, the government must ultimately persuade the court by a preponderance of the evidence that the defendant is a flight risk. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). Detention based on danger to the community must "be supported by clear and convincing evidence." 18 U.S.C. § 3142(f).

The Bail Reform Act lists four factors to be considered in the detention analysis whether for risk of flight or dangerousness: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See id. § 3142(g). Once a defendant has met his burden relating to danger to the community and risk of flight, the presumption in favor of detention does not disappear entirely but remains a factor for the court to consider. Mercedes, 254 F.3d at 436.

III.    A Presumption of Detention Applies

This case involves offenses for which there is a presumption that no combination of conditions will reasonably assure the defendant's appearance or the safety of the community. See 18 U.S.C. § 3142(e)(3). Specifically, Romero faces a ten-year mandatory minimum sentence of prison on both counts of the indictment. These offenses carry the presumption for detention. See id. Accordingly, the defendant bears the initial burden of showing that he is not a danger to the community nor a flight risk. For the reasons set forth below, he cannot sustain that burden.

IV.   The Defendant Is a Danger to the Community and Present a Serious Risk of Flight

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history). Significantly, dangerousness includes "the harm to society caused by [the likelihood of continued] narcotics trafficking." United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985). That danger is particularly strong here because of the defendant's long history of drug trafficking. The scope and continuous nature of the defendant's criminal conduct demonstrates that he is responsible, in part, for the steady supply of illicit drugs that flow through and around the Eastern District of New York, significantly compromising the quality of life for the residents of that community.

The defendant also poses a risk of flight. Given the significant jail time he faces upon conviction, the defendant has a strong incentive to flee from prosecution. See United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond to Mexico); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms of 105 years' imprisonment created potent incentives to flee); United States v. Dodge, 846 F. Supp. 181, 184–85 (D. Conn. 1994) (possibility of a severe sentence heightens the risk of flight).

In addition, the evidence makes clear that the defendant has strong ties to the Dominican Republic, where he lives and the only country of which he holds citizenship, including to other members of the DTO based there. Federal courts have repeatedly recognized that "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). Indeed, border crossing records reveal continuous travel between the United States and the Dominican Republic in the past ten years as well as foreign travel to other countries. See United States v. Zarrab, 2016 WL 3681423, at *8 (S.D.N.Y. June 16, 2016) (citing the defendant's extensive international travel as one factor supporting detention).

V.   The Bail Reform Act Weights in Favor of Detention

All four factors of the Bail Reform Act weigh in favor of detaining Romero. Over at least a four-year period, the defendant served as a leader of a multinational DTO and conspired with others to import large quantities of cocaine into the United States and to distribute that cocaine. The evidence supporting these serious charges is strong, including testimony from multiple cooperating witnesses, recorded communications with members of the DTO, electronic communications in which the defendant and his co-conspirators discuss the operations of the DTO and financial records and travel records—all in addition to the above-described evidence of more than 350 kilograms of cocaine seized by law enforcement between 2016 and 2020.

The defendant's personal characteristics and history also demand detention. Apart from the charged conduct and his recent arrest by the Coast Guard, the defendant does not have significant criminal history. However, his criminal conduct as charged—including the use of public servants to effectuate his large-scale narcotics trafficking activities—and recent arrest for migrant smuggling make clear that he has no respect for public authority or the rule of law. Thus, there is no reason to believe that the defendant would obey the Court's orders or conditions of release if the Court grants bail.

VI. Conclusion

For the reasons set forth above, no combination of bail conditions will ensure the safety of the community and the defendant's continued appearance before the Court. For the foregoing reasons, the government respectfully requests that the court issue a permanent order of detention as to defendant Ramon Romero.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By:     /s/
Erin M. Reid
Marietou E. Diouf
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of the Court (WFK) (by ECF and Email)